FILED
SEP - 5 2012
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

SHERI ELLIS SMITH,

Plaintiff,

v.

SECRETARY OF THE ARMY,

Defendant.

Civil Action No.: 1:11-cv-724

**MEMORANDUM OPINION**

The matter comes before the Court on Defendant Secretary of the Army's Motion for Summary Judgment. For the reasons stated in open Court and those that follow, it is hereby

ORDERED that Defendant Secretary of the Army's Motion for Summary Judgment is GRANTED.

**1. Undisputed Facts**[1]

Sheri Ellis-Smith ("Plaintiff") is an African-American female and a former employee of the United States Army Corps of Engineers ("USACE"). Plaintiff worked as a contract specialist with the Europe District of the USACE in Wiesbaden, Germany and Afghanistan from July 2005 to January 2011. Plaintiff brings four claims against Defendant in her filed Complaint: (1) retaliation, (2) hostile work environment and disparate treatment based on retaliation, (3) discrimination based on gender, and (4) discrimination based on race.

[1] Local Civ. Rule 56(B): In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)); *Republic Tobacco, L.P. v. N. Atl. Trading. Co.*, 254 F. Supp. 2d 985, 993-94 (N.D. Ill. 2002) ("Conclusory arguments unsupported by the record are insufficient to preclude summary judgment, and we are not obliged to 'scour the record' looking for factual disputes").

Plaintiff filed four formal EEO complaints between 2008 and 2010 in addition to taking part in informal counseling with EEO counselors in 2007. Dkt. Nos. 64-4 at 2, 35; 64-5 at 14; and 65-5 at 10. In her complaint, Plaintiff alleged that she had suffered racial discrimination, gender discrimination, retaliation, and the creation of a hostile work environment.

Prior to filing the EEO complaints, Plaintiff was the subject of a criminal investigation by the U.S. Army after submitting a claim for lost or damaged property. On January 4, 2006, Plaintiff filed a claim with the U.S. Army's Wiesbaden Claims Office for damages to her personal property in the amount of $16,275.00. She claimed the damage to her property occurred during the course of her move from Alaska to Germany.[2]

Following a review of the claim, it was referred to the U.S. Army Criminal Investigation Division ("CID"), which issued a report in September 2006. Dkt. No. 64-3, Def. Ex. 3. The Report found probable cause to believe Plaintiff committed fraud in her claim. *Id.* It also states that Plaintiff previously submitted a claim in 2004 that sought to recover for much of the same damaged property listed in the 2006 claim. *Id.* The Report also found that Plaintiff inflated replacement costs for particular items. *Id.* Plaintiff denies the accuracy of the CID Report. Dkt. No. 69 at 2. The Army denied Plaintiff's 2006 claim, but did not seek her prosecution. There is no indication that the U.S. Army took any further action between 2006 and the beginning of 2008.[3]

During 2007, Plaintiff began working with Robert Winne and Tracy Wickham. Robert Winne, a Caucasian male, was the District Contracting Chief for the Europe District and

[2] Plaintiff stated that she has brought a civil claim in German courts against the company responsible for physically packing and moving her property from Alaska to Germany.
[3] According to the EEO Counselor's Report dated April 22, 2008, Labor Counselor Mr. Howard determined that the CID Report had not gone through the proper channels when it was filed against Plaintiff. *See* Dkt. No. 65-2 at 31.

Plaintiff's second-line supervisor. Tracy Wickham, a Caucasian male, was Plaintiff's first-line supervisor at that time. In January 2008, Plaintiff met with an EEO counselor to discuss filing an EEO complaint against Winne. She claimed that Winne acted to harm Plaintiff due to racial discrimination, gender discrimination, retaliation and the creation a hostile work environment. She did not file a formal complaint at that time and waited until April.

Around the same time, Winne received a phone call describing the 2006 CID Report and its contents, including the finding of fraud by Plaintiff. He selected a penalty from a table of penalties as required when an employee under his supervision commits fraud. After consulting with a labor law advisor with the USACE and a human resources specialist, Mr. Winne recommended that Plaintiff be suspended for a period of 14 days. Raynette Gurney, supervisory contract specialist YC-3, conducted an independent review of the record and approved the 14-day suspension.

Following her suspension, Plaintiff filed her first formal administrative complaint of discrimination on April 23, 2008. Def. Ex. 4. The complaint alleged that the Plaintiff was being subjected to discrimination, retaliation and harassment based upon her race, sex, and reprisal for prior EEO activity.[4] More specifically, Plaintiff claims she was subjected to a hostile work environment, excluded from team meetings, denied a deployment, disrespected, discriminated against based on race and gender, given a lesser workload, verbally abused and disrespected, denied training, had her privacy rights violated, and unjustly suspended from her employment. Def. Ex. 4.

[4] Plaintiff claims her first protected activity occurred in February 2009 prior to her suspension and consisted of an informal EEO counseling session to discuss Winne's behavior towards Plaintiff. Dkt. No. 69-1 at 21.

The following month, May 2008, Winne recommended the termination of Plaintiff's $10 million contracting warrant based on the CID Report.[5] Based upon Winne's recommendation, the USACE's Principal Assistant for Contracting—Atlanta revoked Plaintiff's contracting warrant in its entirety with prejudice. Dkt. No. 64-4 at 15.

In August 2008, Plaintiff applied for a position in the USACE as a Supervisory Contract Specialist and Branch Chief in Germany. The job description indicated the position would be "one of two senior procurement officials within the Direct Contracts Branch vested with unlimited monetary authority and responsibility for the comprehensive supervision, management, and leadership for a staff of senior contracting officers and contract specialists." Def. Ex. 19 at 6. The selection panel consisted of Winne and two other USACE employees. Winne reviewed all of the 53 resumes submitted for consideration, including Plaintiff's resume. He forwarded eight of the resumes to the other two members of the selection panel, but did not include Plaintiff's resume. The woman chosen for the position was Marilyn Jackson, who already possessed the unlimited contracting warrant necessary for the position.

On March 3, 2009, Plaintiff filed a second formal EEO complaint. She alleged that she was not selected for the supervisory contract specialist position and received a performance rating of 3 on her most recent evaluation because of her race, gender, and in reprisal for her prior EEO activity. The Department of Defense conducted a fact-finding conference in response to Plaintiff's complaint. On June 18, 2010, the Army issued a Final Agency Decision finding no discrimination or retaliation. Dkt. No 64-4 at 42.

[5] Plaintiff claims the actions were unwarranted and motivated by discrimination and reprisal. Dkt No. 69 at 8

In March 2010, Plaintiff issued her third official EEO complaint. She claimed that USACE discriminated and retaliated against her when it refused to extend her tour of duty in Europe for an additional year. In addition, Plaintiff noted in her complaint that the Army had failed to provide her with the usual acknowledgement and award ceremony to celebrate her twenty years of service. Plaintiff's request to extend her tour in Europe was denied as a matter of department policy, which does not allow for extensions over five years. Dkt. No. 65-2 at 23.

Plaintiff filed her fourth complaint in November 2010. She claimed that she was discriminated against and that her personal information was uploaded to a computer drive in violation of her privacy rights.

The Agency was required to dismiss the third and fourth complaints when Plaintiff filed her civil action.

**II. Standard of Review**

Federal Rule of Civil Procedure 56 provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cortex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment has the initial burden of showing the court the basis for its motion and identifying the evidence that demonstrated the absence of a genuine issue of material fact. *Id.* Once the moving party satisfies its initial burden, the opposing party

has the burden of showing, by means of affidavits or other verified evidence, that there exists a genuine dispute of material fact. *See Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *see also Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997) ("To avoid summary judgment, the non-moving party's evidence must be of sufficient quantity as to establish a *genuine* issue of material fact for trial.") (emphasis original). A dispute of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party..." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, "[f]anciful inferences and bald speculations of the sort no rational trier of fact could draw or engage in at trial need not be drawn or engaged in at summary judgment." *Clinchfield Coal Co.*, 124 F.3d at 640. To defeat a summary judgment motion, the existence of specific material evidentiary facts must be shown. *Ash v. United Parcel Service, Inc.*, 800 F.2d 409,411-412 (4th Cir. 1986).

## III. Analysis

### A. Burden of Proof in Title VII Cases

In employment discrimination and retaliation cases, the *McDonnell Douglas* burden shifting sequence applies where there is no direct evidence of discrimination or retaliation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff must state a prima facie case for discrimination or retaliation. *Id.* at 802 n.12. Second, if plaintiff succeeds in stating a *prima facie* case, the burden of production shifts to defendant to articulate legitimate non-discriminatory reasons for the adverse employment action. *See Id.* Third, and finally, to overcome defendant's nondiscriminatory reasons, plaintiff must prove by a preponderance of the evidence that those reasons were not the actual reasons, but were a pretext for discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).

**B. Count I: Retaliation**

Plaintiff has not demonstrated the existence of a genuine issue of material fact for her claim of retaliation. To establish a *prima facie* case for retaliation, a plaintiff must show the following: "(1) she engaged in protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th cir. 2008). While Plaintiff has demonstrated that she participated in protected activities,[6] she has failed to demonstrate that Defendant's actions were materially adverse. In some instances, Plaintiff fails to establish a *prima facie* case of discrimination as a matter of law.

**i. Plaintiff fails to establish causal connection**

In this case, Plaintiff fails to establish a *prima facie* case for retaliation by failing to show a causal connection between her protected actions and the claimed retaliation. As discussed, the burden remains on Plaintiff to demonstrate that her protected activity and the asserted adverse actions are causally connected. *See Ziskie* at 229. Plaintiff fails to satisfy this element because many of the adverse actions were taken or contemplated prior to the protected activity. According to the facts, Winne discovered the CID Report and engaged in conversations to determine Plaintiff's punishment prior to Plaintiff filing her formal complaint against her supervisors.[7] Furthermore, the adverse actions that included revoking Plaintiff's contracting warrant were considered by Defendant prior to discovery of the EEO complaint. Clearly, one cannot retaliate against an employee for engaging in a protected activity until the employee

---

[6] Plaintiff asserts that she engaged in counseling with EEO following an informal complaint prior to Mr. Winne's decision to recommend a suspension.

[7] Plaintiff's Opposition to the Motion for Summary Judgment does not claim that Plaintiff filed her complaint prior to the suspension and does not respond with any factual analysis to Defendant's Memorandum in Support of the Motion for Summary Judgment. Dkt. No. 69.

actually engages in the protected activity. *See* Am. Jur. Job discrimination § 247 ("A lack of causation may be shown where the adverse action occurred before the claimant began to assert [her] rights, or before the employer learned of the protected activity."

**ii. Many of Defendant's actions were not adverse**

Many of the events complained about by Plaintiff are not actionable adverse actions. In order for an employment action to be considered adverse there must be evidence that the practical consequences of the action adversely impact the "terms, conditions, or benefits" of employment. *See James v. Booz-Allen Hamilton, Inc.*, 368 F.3d 371, 379 (4th Cir. 2004). The Supreme Court has held that the level of adversity required for a retaliation claim was lower than that necessary to sustain a discrimination claim. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). But a retaliation plaintiff must, nonetheless, demonstrate that a reasonable employee would have found the challenged action materially adverse; meaning, that it might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Id.* at 68.

As admitted by the Defendant,[8] there were several adverse actions taken by Plaintiff's supervisors, including Plaintiff's 14-day suspension, the revocation of her contracting warrant, and the fact that she was not selected for a position as supervisory contract specialist in Germany. Dkt. No. 65 at 14. Of the numerous additional actions Plaintiff complains, they were not sufficiently adverse. Plaintiff argues that she was assigned a lesser workload, excluded from team meetings, denied an extension of duty in Germany, denied training opportunities, denied proper recognition of her twenty years of service, and had her privacy rights violated when

---

[8] Dkt. No. 65, Memorandum of Law in Support of Defendant's Motion for Summary Judgment.

confidential documents were placed on an intranet or public hard drive. The latter litany of complaints does not satisfy the requirement that Defendant's actions must be materially adverse.

At one point, Plaintiff requested a decrease in her workload and yet she now argues such a decrease was retaliatory. Def. Ex. 15 at 76, 78. In addition, exclusion from a team meeting is not sufficient, by itself or in conjunction with the other complaints, to create a material adverse action. Plaintiff was denied training, but as indicated in email exchanges between the parties, Plaintiff was not required to participate in the training for the legitimate reason that she had satisfied training requirements previously. The burden on Plaintiff to overcome that legitimate business reason has not been overcome. The denial of a proper ceremony for Plaintiff's twenty years in service is not sufficient evidence of an action that adversely impacts terms, conditions, or benefits of the employment. Additionally, there is no evidence offered by Plaintiff to indicate that Defendant violated Plaintiff's privacy rights when her information was disclosed on the intranet or public hard drive. This action, therefore, was not an adverse action by Defendant or Mr. Winne.

Finally, Plaintiff argues her evaluations were lowered due to retaliation and discrimination. But again, these evaluations are not adverse actions. In 2008, Plaintiff's USACE division implemented a new evaluation rating system, the National Security Personnel System. The system included ratings from 1 to 5, with 5 being the highest. A "3" was considered a "valued employee." In her first rating under Wickham's supervision, Plaintiff was given a 3. Of the 11 employees evaluated by Wickham, eight employees were given a 3, one person a 2, and two people a 4. The two persons receiving the higher grades were women, one Hispanic and one African-American. Each of the above argued complaints are not sufficient alone or cumulatively to find sufficient adverse actions against Plaintiff. Taken in context, the lowered evaluations

along with the aforementioned complaints have no significant effect on Plaintiff's employment nor would they have prevented a reasonable employee from making or supporting a charge of discrimination.

**iii. Plaintiff cannot establish pretext**

In addition to failing to satisfy the elements of a *prima facie* case for retaliation, Plaintiff fails to overcome the shifting burden of *McDonnell Douglas Corp.* standard. *See McDonnell Douglas Corp.*, 411 U.S. 792. Specifically, Defendant is able to articulate legitimate non-discriminatory reasons for each of the adverse actions it took against Plaintiff. Once Defendant articulated the legitimate non-discriminatory reasons for the actions, Plaintiff was unable to show that Defendant's reasons were simply a pretext for discrimination. As a matter of law, no reasonable juror could find that Plaintiff satisfied this burden by a preponderance of the evidence.

The 14-day suspension, the revocation of Plaintiff's contracting warrant, and the fact that she was not chosen for a supervisory position for which she applied are all adverse actions. These actions had a materially adverse impact on the terms, conditions, and benefits of Plaintiff's employment. Given the fact that Plaintiff took actions, albeit informal action, with the EEO prior to these adverse actions, it is a genuine issue whether or not there is a causal connection between Defendant's adverse actions and protected activity. Even if Plaintiff were able to satisfy the requirements of a *prima facie* case for retaliation and discrimination, once the burden shifts, Defendant was able to articulate legitimate non-discriminatory reasons for the adverse actions. Plaintiff, however, is then unable to satisfy the burden of showing that Defendant's reasons were simply pretext for discrimination.

Defendant offers a legitimate reason for suspending Plaintiff for 14 days and Plaintiff is unable to offer evidence that would create a genuine issue concerning whether such reasoning was pretextual. To overcome a defendant's nondiscriminatory reasons, the plaintiff must prove by a preponderance of the evidence that the reasons offered were not the actual reasons, but were a pretext for discrimination. *Reeves* at 133. When Plaintiff's supervisor, Mr. Winne, was informed of the CID's report, he had a legitimate reason to suspend Plaintiff. According to Defendant, Mr. Winne was required to choose from a table of punishments when he discovered that the CID report found there existed probable cause that Plaintiff committed fraud. Mr. Winne made a recommendation and that recommendation was upheld and enforced. Dkt. No. 64-2 at 212.

Given the strong reasoning Defendant offers for the suspension, the burden shifts to the Plaintiff to show that those reasons offered were a pretext for discrimination. On this issue, there is no genuine issue of material fact. Plaintiff has been unable to show that the discovery of the report was not the legitimate reason for the suspension or that such a reason was simply a pretext. Similarly, Defendant based the decision to rescind Plaintiff's contracting warrant on the CID Report that found probable cause to believe Plaintiff committed fraud. Removing an employee's ability to freely contract using taxpayer funds when that employee was found to have committed fraud should be presumed valid. Plaintiff has not offered a reason to believe such removal of the contracting warrant was a pretext of discrimination. Finally, Defendant has offered a legitimate reason for denying the Plaintiff's promotion and choosing another applicant for the job of supervisory contract specialist. As Defendant's exhibits show, the candidate chosen had experience and supervisory duties that Plaintiff did not. Def. Ex. 19 at 1. More relevant to this matter, the job required an unlimited contracting warrant. The successful

applicant had the requisite contracting warrant whereas Plaintiff had recently had her contracting warrant revoked.

Plaintiff is able to show that she engaged in protected activities,[9] and in some instances can show that Defendant's actions were materially adverse to the terms, conditions, and benefits of her employment. Under the burden of proof standard of *McDonnell Douglas Corp.*, however, once plaintiff proves a *prima facie* case for retaliation and discrimination and the defendant is able to show that there was a legitimate reason for the adverse actions, then the burden shifts to the plaintiff to show that those legitimate reasons are a pretext for discrimination. *See* 411 U.S. 792. As a matter of law, Plaintiff has not shown there to be a genuine issue of material fact when considering Defendant's legitimate reasons for taking these actions. For each of the adverse actions claimed by Plaintiff, Defendant has offered sufficient reasoning and plaintiff has failed to satisfy her burden of proof or create a material issue of fact.

### C. Count II: Hostile Work Environment and Disparate Treatment Based on Retaliation

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's" race or sex. 42 U.S.C. § 2000e-2(a)(1). A Title VII claim for a hostile work environment requires the plaintiff to show harassment was (1) unwelcome; (2) based on sex or race; (3) sufficiently severe or pervasive to alter the terms of employment and create an abusive atmosphere; and (4) that it was imputable on some factual basis to his employer. *See Ocheltree v.*

---

[9] See relevant EEO Complaints and Plaintiff's claim to have engaged in informal counseling with EEO.

*Scollon Productions, Inc.*, 335 F. 3d 325, 331 (4th Cir. 2003) (en banc). Here, Plaintiff's claims fail under the second and third elements.

To rise to the level of a Title VII violation, conduct must be both subjectively and objectively severe and pervasive. *See, e.g., Xerxes Corp.*, 639 F. 3d at 676. Title VII sets a "high bar" for plaintiffs to jump over in order to satisfy the standards of a hostile work environment. *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F. 3d 167, 176 (4th Cir. 2009). To satisfy the high bar, Plaintiff's workplace must be "permeated with discriminatory intimidation, ridicule and insult…that is sufficiently severe or pervasive to alter conditions of the victim's employment and create an abusive working environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted). "Relevant considerations 'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d at 184 (quoting *Harris*, 510 U.S. at 23).

In this case, Plaintiff's claims of harassment against Defendant are not sufficiently severe or pervasive enough to create an abusive atmosphere. Plaintiff complains of Winne's profanity, which she believed to be unprofessional and against her Christian sensibilities. At no point, however, did Plaintiff allege that this profanity was directed at her in an abusive manner.[10] Def. Ex. 15 at 67.

**D. Counts III & IV: Discrimination Based on Gender & Race**

---

[10] Plaintiff stated that Winne's profanity was used during exclamations and was not directed at individuals. Def. Ex. 15 at 67.

Plaintiff fails to establish a prima facie case for discrimination based either on gender or race. "Absent direct evidence, the elements of prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); 42 U.S.C. § 2000e-16 (prohibiting federal employers from discrimination on the basis of race, color, religion, sex, or national origin). Here, Plaintiff fails to establish that her treatment was different from similarly situated employees outside the protected class.[11]

Generally, in a discrimination case, the plaintiff will raise an inference of disparate treatment by pointing to similarly-situated employees outside of the protected class who received different treatment. *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004); *McDonnell Douglas*, 411 U.S. at 804 ("[I]t is the plaintiff's task to demonstrate that similarly situated employees were not treated equally.") "Such a showing would include evidence that the employees dealt with the same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Haywoodv. Locke, 387 F App'x 355, 2010 WL 2711294 at *3 (4th Cir. July 6, 2010). None of the individuals cited by Plaintiff are shown to be similar in all respects to Ellis-Smith.

Plaintiff argues that there are four employees who committed comparable offenses to her probable fraud and were not similarly disciplined. Typically, in such a situation, Plaintiff must also demonstrate that those employees dealt with the same supervisor, were subject to similar

[11] In her Opposition Memorandum to the Motion for Summary Judgment, Plaintiff simply makes a conclusory statement that such disparate treatment did in fact exist and references exhibits submitted earlier. There is no evidence offered in Plaintiff's opposition that would indicate the existence of a genuine material fact on this issue.

standards, or engaged in the same conduct without mitigating circumstances. *See Haywood v. Locke*, 287 Fed. Appx. 355, 369 (4th Cir. 2010). Two of the coworkers are unnamed and Plaintiff offered no evidence to indicate that they were similarly situated employees. The other two employees include Elaine Gray and Jari Altonen. In Plaintiff's submission, Dkt. No. 69-8, she claims that Gray was accused of conducting personal business using the employer's property during work hours. Mr. Altonen was accused of leaving the scene of an accident. Dkt. No. 69-8. In either case, the alleged wrongs do not rise to the level of the actions of Plaintiff. While the other actions may have been improper, Plaintiff's actions allegedly involved defrauding the U.S. Army. Given the relevance such a charge has to Plaintiff's authority to contract on behalf of the USACE, her circumstances were substantially dissimilar to those offered into evidence. Therefore, Plaintiff's claim that similarly situated employees were treated differently is not supported by factual evidence.

Upon a review of the factual allegations made by Plaintiff in her Opposition to the Motion for Summary Judgment, none support her disparate treatment claim. For example, Plaintiff's Opposition cites the testimony of Mr. Gavis in the prior Army investigation as evidence of disparate treatment of African-Americans under Winne's supervision. *See* Dkt. No. 69. As noted, however, there is no evidence offered to indicate that Winne treated Plaintiff differently than employees outside of the protected classes. In fact, other depositions included testimony that Winne was "bully-ish and rude" but, that this was based more on personality conflict than discrimination based on gender or race. *E.g.*, Def. Ex. 34 at 314, 326 and Def. Ex. 31 at 8-9. Much of the cited testimony included statements regarding Winne's "small talk" with

employees or testimony that he was generally rude to all employees regardless of race.[12] To the contrary, there are no articulable instances of racial discrimination by Winne against African-American employees and no instances of discrimination against Plaintiff.

Similarly, Plaintiff's claims against Winne for gender discrimination are not supported by the evidence offered by Plaintiff. While there is relevant testimony about the treatment of other employees under Winne's supervision, there no evidence that Winne discriminated against Plaintiff due to gender discrimination. In fact, when asked if Winne treated male and female employees about the same, Mr. Gatz replied, "I would say yes. He was generally rude to just about everybody he interacted with. And generally assumed that, and made it clear that he was in charge and nobody else knew what they were doing. Myself included." Def. Ex. 31 at 16.

Given the failure of Plaintiff to present facts that demonstrate gender and racial discrimination or disparate treatment within the workplace, there are no issues for a trier of fact to examine. Plaintiff also fails to establish a *prima facie* case to show that the legitimate non-discriminatory reasons for Defendant's actions were merely a pretext for discrimination.

## CONCLUSION

For the aforementioned reasons, and good cause shown, Defendant's Motion for Summary Judgment shall be GRANTED. An appropriate Order shall issue.

/s/

September 5, 2012
Alexandria, Virginia

Liam O'Grady
United States District Judge

[12] Def. Ex. 31 at 18. Testimony of Mr. Christopher Gatz, when asked if Mr. Winne treated African-American and Caucasian employees differently, "I can say, you know, in total honesty, I think Mr. Winne's treatment of just about everybody he encountered was pretty much the same. He seemed to have a, you know, a disdain…and didn't enjoy working with anyone. I can't say that for sure he was treating one group differently than another. He was generally the same to all."